UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA M. WEST,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner of the<br>Social Security Administration,<br><br>Defendant. | Case No. C08-1484-JCC-BAT<br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Lisa M. West seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income benefits by the Commissioner of the Social Security Administration ("Commissioner"), after a hearing before an administrative law judge ("ALJ"). This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule MJR 4(A)(4) and as authorized by *Matthews v. Weber*, 423 U.S. 261 (1976). Dkt. 10. Plaintiff presents six issues: whether the ALJ erred in (1) rejecting Dr. Joy Fackenthall's opinions, (2) weighing the opinions of Dr. Mark Koenen and state agency psychologists, (3) evaluating the lay witness testimony, (4) evaluating plaintiff's subjective complaints, (5) determining that plaintiff could return to past work as a fast food worker, and (6) determining that plaintiff was not disabled under the medical-vocational guidelines. Dkt. 11 at 8. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be AFFIRMED and this matter DISMISSED with prejudice.

REPORT AND RECOMMENDATION – 1

# I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, who is 43 years old, has an 11th grade education and is a licensed nursing aide. Tr. 44, 61, 310. She has past work experience as a fast food worker, cannery worker, cashier, and nursing aide. Tr. 72, 310. She was last employed as a nursing aide in April 2003. Tr. 310.

In May 2003, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability as of April 20, 2003.[1] Tr. 44-46. She also filed an application for supplemental security income benefits. Tr. 300. Her applications were denied initially and on reconsideration. Tr. 24-26, 30-31, 305-06. After a hearing, the ALJ issued a decision on June 8, 2006, finding plaintiff not disabled. Tr. 10-21. The Appeals Council denied review of that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 5-7.

Plaintiff then filed an action in this Court seeking judicial review of the decision. Based on the stipulation of the parties, the Court remanded the case for further proceedings. Tr. 351-52. The Appeals Council vacated the ALJ's initial decision. Tr. 353-56. After a second hearing, the ALJ issued a decision on June 27, 2008, again finding plaintiff not disabled. Tr. 335-50. The Appeals Council declined to assume jurisdiction of the case, making the ALJ's June 27, 2008 decision the Commissioner's final decision in this case. Tr. 326-29. Plaintiff now seeks judicial review of the ALJ's June 27, 2008 decision.

# II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that

---

[1] The application lists the alleged onset date as April 20, with the year 2003 crossed out and 2002 added by hand. Tr. 44. The ALJ evaluated the alleged onset date as April 20, 2003. Tr. 340. Plaintiff's opening brief includes both dates as the alleged onset date, and both dates appear in the record. Dkt. 11 at 2 (2003), 3 (2002); *e.g.*, Tr. 47 (2002), 64 (2003), 91 (2003). Because the ALJ used April 20, 2003 as the alleged onset date and plaintiff did not assign error to this date, the Court will use the same date.

plaintiff has not engaged in substantial gainful activity since April 20, 2003, the alleged onset date. Tr. 340 (Finding 2).

At step two, the ALJ found that plaintiff has the severe impairments of obesity, left shoulder and back strain, and posttraumatic stress disorder ("PTSD"). *Id.* (Finding 3).

At step three, the ALJ found that plaintiff's impairments, alone or in combination, do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 341 (Finding 4). Specifically, the ALJ concluded that plaintiff's impairments do not meet or equal listing 1.04, disorders of the spine, or listing 12.06, affective disorders. *Id.* at 341-42.

Before proceeding to step four, the ALJ found that plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can understand, remember, and carry out simple tasks and instructions, stand and/or walk up to 6 hours in an 8-hour workday, sit up to 6 hours in an 8-hour workday, and engage in pushing and pulling to the extent that she can lift and carry. *Id.* (Finding 5).

At step four, the ALJ found that plaintiff is capable of performing past relevant work as a fast food worker because this work does not require the performance of work-related activities precluded by plaintiff's residual functional capacity. Tr. 347 (Finding 6). The ALJ accordingly found that plaintiff was not disabled from April 20, 2003 through the date of the decision. *Id.* (Finding 7).

Finally, the ALJ found, in the alternative, at step five that plaintiff is not disabled under the Medical-Vocational Guidelines. *Id.* (Finding 8). The ALJ found that, considering her mental limitations, plaintiff is able to perform unskilled work. Tr. 349. The ALJ then found that, given plaintiff's residual functional capacity of performing light work, her age and education, and the ability to perform unskilled work, Medical-Vocational Guideline 202.17 directs a finding that

REPORT AND RECOMMENDATION – 3

plaintiff is not disabled. *Id.*

## III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

## IV. DISCUSSION

**A.    The ALJ Properly Evaluated Dr. Fackenthall's Opinions**

Plaintiff contends that the ALJ erred in rejecting the opinions of Joy Fackenthall, M.D., plaintiff's treating physician. Dkt. 11 at 9. The Commissioner responds that the ALJ properly evaluated Dr. Fackenthall's opinions, and his decision to reject them was based on clear and convincing and specific and legitimate reasons. Dkt. 13 at 5-7.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff first argues that the ALJ erred in rejecting Dr. Fackenthall's diagnosis of chronic pain syndrome because there are medically verifiable abnormalities linked to the pain, thus satisfying the "threshold requirement." Dkt. 11 at 9. Plaintiff points to medical records showing diagnoses of chronic back pain, chronic shoulder pain, and musculoskeletal pain. *Id.* at 9-10.

In evaluating the effect of pain on a claimant's residual functional capacity, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. if so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work. *See id.* Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms she alleged. Tr. 343. Thus, contrary to plaintiff's assertions, the ALJ found that plaintiff had met the "threshold requirement."

However, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *Id.* As part of this analysis, the ALJ noted that Dr. Fackenthall assessed plaintiff with chronic pain syndrome and continued to refill plaintiff's narcotic pain medications, despite concern from Howard Leibrand, M.D., that plaintiff inappropriately used the emergency room to obtain narcotic medications, and other evidence of drug-seeking behavior. Tr. 346. The ALJ rejected Dr. Fackenthall's opinion

regarding the intensity, persistence, and limiting effects of plaintiff's pain based in part on plaintiff's drug-seeking behavior. The ALJ gave specific and legitimate and clear and convincing reasons for this determination.

Plaintiff also argues that the ALJ erred in failing to evaluate the possibility that plaintiff's mental impairments are the basis for plaintiff's pain. Dkt. 11 at 10. Under 20 C.F.R. § 404.1529(b), the ALJ will develop evidence regarding the possibility of a medically determinable mental impairment as the basis for subjective symptoms when there is evidence that such an impairment exists and the medical evidence does not substantiate any physical impairment capable of producing the symptoms. However, as stated above, the ALJ did in fact find that plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms she alleged. Tr. 343. Moreover, plaintiff points to no evidence linking her mental impairments and her pain. The ALJ did not err in failing to separately analyze plaintiff's mental impairments as the basis for her pain.

Plaintiff next asserts that the ALJ erred in according no weight to the opinions Dr. Fackenthall expressed in a residual functional capacity questionnaire. Dkt. 11 at 10. In that questionnaire, Dr. Fackenthall opined that plaintiff could sit or stand continuously for one hour, sit for two hours and stand for four hours in an eight-hour workday and that plaintiff would need a job that permits shifting positions at will and unscheduled breaks. Tr. 278. She further opined that plaintiff could frequently lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds. Tr. 79.

In his June 2006 decision, the ALJ gave no weight to Dr. Fackenthall's opinion that plaintiff's back pain severely limits her functional capacity. Tr. 19. This was because Dr. Fackenthall filled out the questionnaire in plaintiff's presence, Dr. Fackenthall "apparently relied

REPORT AND RECOMMENDATION – 6

quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported," and the ALJ had already concluded that plaintiff's subjective complaints were unreliable. *Id.* In his June 2008 decision, the ALJ again gave no weight to Dr. Fackenthall's opinion for the reasons stated in the earlier decision. Tr. 343.

The ALJ provided specific and legitimate and clear and convincing reasons for rejecting Dr. Fackenthall's opinions regarding plaintiff's residual functional capacity. An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Fackenthall's records largely reflect her practice of refilling plaintiff's narcotic pain medication prescriptions, with little independent analysis or diagnosis. *E.g.*, Tr. 262-71, 294-99, 167-73. The only diagnostic test Dr. Fackenthall referred to in the questionnaire was an MRI on August 16, 2002. Tr. 276. This test found moderate degenerative disc change. Tr. 130. But Dr. Fackenthall did not explain how these changes affected plaintiff's functional capacity. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). The ALJ's conclusion that Dr. Fackenthall's opinions are based to a large extent on plaintiff's unreliable subjective complaints is a reasonable inference from the evidence. Plaintiff faults the ALJ for his reliance on the fact that Dr. Fackenthall filled out the questionnaire in plaintiff's presence, when plaintiff testified that Dr. Fackenthall did not ask her questions as she completed the form. *See* Tr. 323-24. But the ALJ gave sufficient reasons for rejecting Dr. Fackenthall's opinions, regardless of the circumstances in which Dr. Fackenthall filled out the form.

Plaintiff also argues that the ALJ erred in giving significant weight to the opinions of Deborah Benz, M.D., plaintiff's former treating physician, in rejecting Dr. Fackenthall's opinions.

REPORT AND RECOMMENDATION – 7

Dkt. 11 at 12. Dr. Benz concluded in January 2003 that plaintiff could lift 30 pounds frequently and 45 pounds occasionally. Tr. 232. Plaintiff asserts that giving weight to this opinion was error because Dr. Benz was no longer her treating physician on the alleged onset date of April 20, 2003, and the records show that her condition deteriorated after the alleged onset date. Dkt. 11 at 12. However, any error in this reliance was harmless. The ALJ found that plaintiff had the residual functional capacity to perform light work, which includes lifting no more than 20 pounds at a time with frequent lifting of up to 10 pounds. *See* 20 C.F.R. § 1567(b). This finding comports with Dr. Fackenthall's opinion that plaintiff could frequently lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds. Tr. 79.

**B.     The ALJ Properly Evaluated Dr. Koenen's and the State Agency Psychologists' Opinions**

Plaintiff next argues that the ALJ failed to properly evaluate the opinions of examining psychiatrist Mark A. Koenen, M.D., and nonexamining state agency psychologists John Robinson, Ph.D., and Jane Lewis, Ph.D., because the ALJ failed to consider their opinions that plaintiff is limited in her ability to complete a normal workday, to deal with the stress of competitive work, and to interact with the public. Dkt. 11 at 13-14. The Commissioner responds that the ALJ properly evaluated these opinions. Dkt. 13 at 8-9, 11-12.

Dr. Koenen examined plaintiff on September 18, 2003. Tr. 237-42. He opined that plaintiff had the ability to perform simple and repetitive tasks as well as detailed and complex tasks based on her ability to function around the home. Tr. 242. He believed that her ability to interact with coworkers and the public would be at least moderately impaired by her irritability. *Id.* He also believed that plaintiff has been able to perform work activities on a regular basis in the past and would likely be able to do so in the future. *Id.* He opined that plaintiff's psychiatric condition may make it somewhat difficult for her to complete a normal workday without

REPORT AND RECOMMENDATION – 8

interruption due to her general irritability and hypervigilance, and that plaintiff's ability to deal with the usual stress encountered in competitive work is also likely to be very limited, but that psychotherapy could improve these conditions. *Id.*

The ALJ concluded, based on Dr. Koenen's opinion that plaintiff may have some difficulty with stress and sustained activity, that plaintiff was limited to simple tasks and instructions. Tr. 343. The ALJ stated that he did not credit the other limitations set forth by Dr. Koenen because it appeared that Dr. Koenen took them at face value from plaintiff's statements, which the ALJ did not credit. *Id.*

Plaintiff asserts that the ALJ improperly rejected Dr. Koenen's opinions when the ALJ concluded that the restrictions found by Dr. Koenen limit plaintiff to simple work. Dkt. 11 at 13. Dr. Koenen stated that plaintiff was capable of performing both simple and complex tasks, but that plaintiff may have some difficulty with stress and sustained activity. Tr. 242. The ALJ translated these difficulties into a limitation to light work, less than Dr. Koenen thought plaintiff was capable of performing. Tr. 343. This is a rational interpretation of Dr. Koenen's opinions, which the Court will uphold. *See Thomas*, 278 F.3d at 954. The ALJ rejected Dr. Koenen's opinion that plaintiff would be moderately limited in dealing with coworkers and the public because Dr. Koenen did not specify what the limitations would be and seemed to take them at face value from plaintiff's statements. Tr. 343. As with Dr. Fackenthall's opinions based on plaintiff's subjective complaints that the ALJ found unreliable, the ALJ may reject Dr. Koenen's opinions for the same reason. *Tommasetti*, 533 F.3d at 1041. The ALJ did not err in evaluating Dr. Koenen's opinions.

Dr. Robinson and Dr. Lewis completed a mental residual functional capacity assessment on September 30, 2003, and April 18, 2004. Tr. 256-59. They concluded that plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out

REPORT AND RECOMMENDATION – 9

detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the public. Tr. 256-57. In their functional capacity assessment, Dr. Robinson and Dr. Lewis opined that plaintiff would likely have some difficulty sustaining adequate concentration, pace, and persistence for detailed or complex tasks, but would have no problem completing simple work. Tr. 258. They opined that plaintiff should be able to sustain adequate attention and concentration for simple work up to two-hour periods. *Id.* They noted that there were no reports of problems getting along with others, although they opined that plaintiff would be moderately impaired in working with the public because she dislikes crowds and they make her anxious. *Id.* They opined that plaintiff's PTSD symptoms were not as severe as plaintiff claims because they were not consistent with claimant's abilities as demonstrated in the record. *Id.* at 259. Finally, they opined that the objective evidence did not support a conclusion that plaintiff would be able to perform detailed or complex tasks. *Id.*

The ALJ gave significant weight to Dr. Robinson and Dr. Lewis's opinion that plaintiff was capable of understanding, remembering, and carrying out simple instructions. Tr. 345. But the ALJ found that their determination that plaintiff is moderately limited in her ability to interact with the public is not supported by her prior work history involving superficial contact with the public. *Id.*

Plaintiff argues that the ALJ improperly relied on her prior history of working with the public to reject the opinion that she would have difficulty working with the public at the present time. Dkt. 11 at 13. An ALJ may reject a nonexamining doctor's opinion by reference to specific evidence in the record. *See Sousa v. Callahan*, 143 F.3d 1240 (9th Cir. 1998). Here, the ALJ

resolved the conflict between plaintiff's past work involving contact with the public and the psychologists' opinion that she would be moderately impaired in working with the public by rejecting the psychologists' opinion. It is the ALJ's job to resolve conflicts in the evidence. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's conclusion is a rational interpretation, which the Court will uphold. The ALJ did not err in rejecting the psychologists' opinion regarding plaintiff's ability to work with the public.

**C.      The ALJ Properly Evaluated the Lay Witness Testimony**

Plaintiff next argues that the ALJ erred in his assessment of the lay witness testimony. Dkt. 11 at 14. She faults the ALJ for not specifying which statements he does not find credible. *Id.* She also argues that the lay witness testimony is consistent with the medical opinions and that the ALJ improperly rejected lay witness testimony without providing sufficient reasons for doing so. *Id.* at 14-15.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing do. *Lewis v. Apfel*, 326 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with medical evidence or the claimant's own testimony. *See id.* at 511-12.

Plaintiff's friend Deanna Hutchinson completed a daily activities questionnaire on plaintiff's behalf. Tr. 80-84. She stated that plaintiff was very depressed, called in tears at any time of day or night, was irritable, and unable to sustain concentration, attention, and focus. *Id.* She also stated that plaintiff was able to complete tasks, participate in conversations, and interact socially with others, although she was a bit of a loner. *Id.*

The ALJ found that Ms. Hutchinson's statement was credible to the extent that it was

REPORT AND RECOMMENDATION – 11

consistent with the medical reports. Tr. 343. He found that the medical reports from the time of Ms. Hutchinson's statement showed that plaintiff was alert, cooperative, not tearful, doing very well on medication, and reporting some stresses based on situational circumstances. Tr. 344. The ALJ found that these records were consistent with plaintiff's testimony was that her mental symptoms substantially resolved with medication. Tr. 344. The ALJ concluded that the reports did not entirely support Ms. Hutchinson's statement, but Ms. Hutchinson's statement showed that plaintiff did not have significant social limitations. *Id.* The ALJ thus specified which portions of Ms. Hutchinson's testimony he discounted and gave specific, germane reasons for doing so. The ALJ did not err in his evaluation of Ms. Hutchinson's statement.

Plaintiff's roommate Dennis Morgan testified at the first hearing before the ALJ. Tr. 321-23. He testified that plaintiff managed household chores, was somewhat distant or quiet and depressed due to situational living and financial difficulties, and slept a great deal. Tr. 322-23. The ALJ found Mr. Morgan's testimony credible to the extent supported by the evidence, as the ALJ had explained with respect to Ms. Hutchinson's testimony. Tr. 344. The ALJ concluded that Mr. Morgan's testimony was, overall, consistent with the residual functional capacity assessment. *Id.* Again, the ALJ gave germane reasons for rejecting the portions of Mr. Morgan's testimony that conflicted with the medical evidence. The ALJ did not err in evaluating Mr. Morgan's testimony.

Plaintiff's friend Jenny Morgan testified at the second hearing before the ALJ. Tr. 520-23. She testified that plaintiff was shaky and nervous around others, was socially avoidant, and performed housework in increments. *Id.* The ALJ found Ms. Morgan's testimony credible to the extent that it was consistent with the medical reports. Tr. 346. The ALJ noted that there were a number of reports that plaintiff was socially avoidant, fearful around crowds, and unable to

interact with others at more than superficial levels, but other lay witnesses did not think this was the case. *Id.* The ALJ found that plaintiff's testimony suggested that her social conflicts and resulting withdrawal were similar to typical roommate spats. *Id.*

Plaintiff faults the ALJ for relying on "other lay witnesses" without specifying which other witnesses he referred to. Dkt. 11 at 14. However, the ALJ had previously discussed the lay testimony from Ms. Hutchinson, who testified that plaintiff was able to participate in conversations and interact socially with others, and Mr. Morgan, who testified that plaintiff becomes depressed or withdrawn because of her living situation or other stress. Tr. 80-84, 393-94. It is a rational inference, which the Court will uphold, that the ALJ was referring to these lay witnesses and resolving the conflicts between their testimony and Ms. Morgan's. It is the ALJ's job to resolve conflicts in testimony. *Matney*, 981 F.2d at 1020. As with the other lay testimony, the ALJ gave germane reasons for rejecting the portions of Ms. Morgan's testimony that conflicted with the medical evidence and the other lay testimony.

The ALJ considered all the lay testimony and either accepted it or gave germane reasons for disregarding it. The ALJ did not err in evaluating the lay witness testimony.

**D.     The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Chronic Pain, Fatigue, Anxiety, and Depression**

Plaintiff next argues that the ALJ did not properly evaluate plaintiff's subjective symptoms of chronic pain, fatigue, anxiety, and depression because the ALJ did not offer specific, clear, and convincing reasons for rejecting plaintiff's testimony about the severity of her symptoms. Dkt. 11 at 15-16. She asserts that the ALJ did not state which of plaintiff's statements he did not find credible and mischaracterized Mr. Morgan's testimony about plaintiff's ability to complete housework. *Id.* The Commissioner responds that the ALJ gave clear and convincing reasons to reject plaintiff's testimony, despite erroneously relying on one improper reason. Dkt. 13 at 15-18.

REPORT AND RECOMMENDATION – 13

Evaluating a claimant's subjective symptom testimony requires a two step process. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments that could reasonably be expected to produce some degree of pain or other symptoms. *Id.* at 1282. Once the claimant has met this test, and if there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Id.* at 1283-84. In considering a claimant's credibility, the ALJ may consider the claimant's daily activities and the course of her treatment, among other factors. *Id.* at 1284.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms, thus satisfying the first step of the analysis. Tr. 343. The ALJ found, however, that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they are inconsistent with the residual functional capacity assessment. *Id.*

The ALJ made specific findings giving several clear and convincing reasons for rejecting plaintiff's subjective complaints. The ALJ found that plaintiff's daily activities were incongruous with her claim of total disability. Tr. 345. He noted that Mr. Morgan testified that plaintiff did housework, including dishes, laundry, and vacuuming, on a regular basis. *Id.* Plaintiff reported to a counselor that she did all the cooking, cleaning, and babysitting at a house she lived in. *Id.* And on multiple occasions, plaintiff went to the emergency room to obtain pain medications for back and shoulder pain caused by moving heavy items, helping friends move, and packing boxes for friends. Tr. 346. The ALJ found that these activities suggest that her alleged injuries were not particularly limiting. *Id.* The ability to perform activities inconsistent with the presence of a

disabling condition may be a sufficient reason to reject a claimant's testimony. *See Morgan*, 169 F.3d at 600.

Plaintiff asserts that the ALJ incorrectly characterized Mr. Morgan's testimony, pointing out that he testified that plaintiff does housework "a little bit here and there." Dkt. 11 at 15, Tr. 322. However, Mr. Morgan also testified that housework "does get done on a regular basis." Tr. 322. The ALJ did not mischaracterize Mr. Morgan's testimony.

The ALJ also found that the frequency and course of plaintiff's treatment did not support her claim of total disability. Tr. 346. He noted that plaintiff's course of treatment was very conservative, and consisted primarily of taking narcotic pain medications daily, prior physical therapy, and occasional trigger point injections. *Id.* Plaintiff testified that she saw her doctor only once every three months. Tr. 347. And, until a recent exacerbation of her shoulder pain, no doctor had recommended surgical procedures to alleviate plaintiff's pain. *Id.* A claim of high levels of pain is inconsistent with conservative treatment. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Evidence of conservative treatment may be a sufficient reason to discount a claimant's testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In addition, an ALJ may consider inconsistent treatment or a lack of treatment in a credibility determination. *Burch v. Barnhart*, 400 f.3d 676, 681 (9th Cir. 2005).

The ALJ also noted plaintiff's extensive use of the emergency room to obtain narcotic pain medications and apparent drug-seeking behavior. Tr. 346. He noted that Howard Leibrand, M.D., expressed concern about plaintiff's inappropriate use of the emergency room and refused to refill her narcotic medications. *Id.* The ALJ found that plaintiff's drug-seeking behavior further clouds her credibility. *Id.* Evidence of drug-seeking behavior may cast doubt on a claimant's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

REPORT AND RECOMMENDATION – 15

The Commissioner concedes, however, that the ALJ relied on an improper reason for rejecting plaintiff's testimony. Dkt. 13 at 17. The ALJ noted that Dr. Fackenthall assessed plaintiff with chronic pain syndrome, but stated that there was no evidence of a pain syndrome elsewhere in the record. Tr. 346. The Commissioner concedes that this was error, but argues that it was harmless because, even without this reason, substantial evidence supports the ALJ's credibility determination. Dkt. 13 at 17. Plaintiff, on the other hand, asserts that the error is not harmless because the ALJ may have made a different disability determination had he considered evidence of chronic pain syndrome. Dkt. 14 at 5.

An ALJ's use of an invalid reason to support his adverse credibility finding may be harmless error. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). If, despite the error, there remains substantial evidence to support the ALJ's conclusion, the error does not negate the validity of the ALJ's credibility decision. *Id.* at 1197. The question is not, as plaintiff asserts, whether the ALJ would have made a different decision absent any error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Rather, the question is whether the ALJ's decision remains legally valid despite the error. *Id.*

Here, the ALJ's valid reasons for rejecting plaintiff's subjective complaints included the fact that her daily activities and course of treatment were incongruous with the severity of the symptoms she asserted, as well as her drug-seeking behavior. Substantial evidence supports each of these reasons and the ALJ's credibility determination based on them. The ALJ provided specific, clear, and convincing reasons for rejecting plaintiff's complaints, supported by specific references to the record. Any error in failing to consider Dr. Fackenthall's assessment of chronic pain syndrome was harmless. Accordingly, the Court will uphold the ALJ's assessment of plaintiff's credibility with respect to her subjective complaints.

**E.     The ALJ Erred in Concluding that Plaintiff Is Capable of Performing Past Relevant Work as a Fast Food Worker**

Plaintiff next assigns error to the ALJ's finding at step four that plaintiff could perform past relevant work as a fast food worker. Dkt. 11 at 17. She asserts that the ALJ's finding is not supported by substantial evidence because he did not take into consideration her subjective symptoms of pain, fatigue, anxiety, and depression, and the medical opinions regarding her ability to complete a normal workday and have contact with the public. *Id.* However, as discussed above, the ALJ did not err in his assessment of plaintiff's subjective symptoms and the medical opinions.

Plaintiff also asserts that this finding was in error because her past work as a fast food worker exceeded her residual functional capacity as determined by the ALJ and was more than 15 years before the ALJ's decision. *Id.* at 18. The Commissioner concedes that this was error. Dkt. 13 at 18. Plaintiff stated that in her work as a fast food worker, she had to walk or stand for eight hours each day. Tr. 72, 76. This exceeds the ALJ's residual functional capacity finding limiting plaintiff to standing or walking for six hours in an eight-hour workday. Tr. 342. Plaintiff also stated that her fast food work was at Taco Time, which records show occurred in 1990. Tr. 49, 76. Past relevant work is work performed within the last 15 years. 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff's work as a fast food worker took place before the relevant timeframe.

Although the ALJ's finding at step four was erroneous, the Commissioner argues that the error was harmless because the ALJ made an alternative finding at step five that plaintiff is not disabled under the Medical-Vocational Guidelines. Dkt. 13 at 19. An erroneous step-four finding is harmless if the ALJ conducts a proper analysis at step five. *See Tommasetti*, 533 F.3d at 1043.

**F.     The ALJ Properly Used the Grids as a Framework to Find Plaintiff Not Disabled**

Finally, plaintiff argues that the ALJ erred in finding plaintiff not disabled under the

REPORT AND RECOMMENDATION – 17

Medical-Vocational Guidelines (or "grids") because plaintiff has significant nonexertional limitations that the grids do not account for. Dkt. 11 at 19. The Commissioner responds that plaintiff's nonexertional limitations are not so severe that the grids do not account for them, so that the ALJ's use of the grids was proper and a vocational expert was not necessary. Dkt. 13 at 19-20.

At step five of the disability determination process, the burden is on the Commissioner to demonstrate that the claimant can perform a significant number of jobs in the national economy, other than the claimant's past work, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Medical-Vocational Guidelines identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). Where the grids match a claimant's qualifications, they direct a finding of either disabled or not disabled. *See id.* Where the grids do not match a claimant's qualifications exactly, the ALJ can either use the grids as a framework to determine whether work exists that the claimant can perform, or, if the claimant has significant non-exertional limitations, rely on a vocational expert's opinion. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

Here, the ALJ used the grids as a framework and concluded that plaintiff's mental limitations would not unduly reduce her capacity to perform substantial gainful activity. Tr. 347. As discussed above, the ALJ found that plaintiff's severe impairments include PTSD, and that plaintiff is limited to simple tasks and instructions because of her difficulty with stress and sustained activity. Tr. 340, 343. The ALJ found, at step five, that these limitations would not have a significant effect on her ability to perform unskilled work, which generally requires the ability to understand, carry out, and remember simple instructions. Tr. 348-49. He found that

plaintiff retained the capacity to perform substantially all of the unskilled light and sedentary work contemplated by the grids and that guideline 202.17 provided a determination that plaintiff is not disabled. Tr. 349.

Plaintiff asserts that use of the grids was improper because the ALJ did not evaluate the individual impact of stress on plaintiff. Dt. 11 at 20. However, as discussed above, the ALJ considered plaintiff's difficulty in managing stress when finding her residual functional capacity limited to understanding, remembering, and carrying out simple tasks and instructions. Tr. 343. The ALJ considered this limitation when using the guidelines as a framework for his step-five analysis. Tr. 347. Thus, the ALJ did not ignore the impact of stress on the plaintiff.

Plaintiff also argues that the ALJ should have obtained a vocational expert's testimony instead of using the grids. Dkt. 11 at 20. The grids provide for evaluation of claimants with both exertional and non-exertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). However, the grids are inapplicable when a claimant's non-exertional limitations are "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Hoopai*, 499 F.3d at 1075 (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotation marks omitted)). In such a case, vocational expert testimony is required. *Id.*

The ALJ relied on Social Security Ruling ("SSR") 85-15 to conclude that plaintiff's limitation to simple work is not sufficiently severe so as to significantly erode the occupational base for unskilled work. SSR 85-15 states that unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people.[2] It also states that the basic mental demands of

---

[2] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v.*

REPORT AND RECOMMENDATION – 19

competitive, remunerative, unskilled work generally include the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. Plaintiff's limitation to simple work is compatible with the ability to perform unskilled work. The ALJ did not err in concluding that plaintiff's non-exertional limitations did not significantly limit the range of work permitted by her exertional limitations. Accordingly, the ALJ did not err in using the grids as a framework for his step-five analysis to find that plaintiff is not disabled.

Because the ALJ did not err in determining at step five that plaintiff is not disabled, any error in his step-four determination that plaintiff is capable of performing her past work as a fast food worker is harmless.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 8th day of April, 2009.

BRIAN A. TSUCHIDA
United States Magistrate Judge

---

*Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION – 20